## 24354.  STANDRIDGE v. STANDRIDGE.

FRANKUM, Justice.  1.  Robert W. Standridge filed a suit for divorce against his wife, Nona M. Standridge.  He alleged that the separation between the plaintiff and the defendant resulted solely from cruel treatment of the petitioner by the defendant for the past several years of the marriage and that he had endured the treatment as long as he physically and mentally could without further injury to his health, life or limb.  More specifically the petitioner set forth the alleged cruel treatment as consisting of nagging, fussing, and arguing and complaining, making degrading remarks to the petitioner, insisting that everything must be exactly as the defendant desired it, or that it would be no way at all, refusing to compromise any dispute, refusing to discuss any of the family problems, keeping the petitioner in a state of turmoil, and constantly complaining about ill health which "is mostly imaginary."  The defendant filed an answer and a cross action in which she sought a divorce and alimony from the plaintiff on the grounds of physical and mental cruelty alleged to have been inflicted upon her by the plaintiff.  On the trial of the case, the plaintiff testified that on the day preceding the separation the defendant had received a check for a substantial sum in settlement of a suit or claim for damages which she had and that he asked her to deposit it in a joint checking account which the parties maintained, but that she refused to do so; that at the time he was happy with his wife, there had been no fusses or arguments or any disagreements, their voices had not been raised and that there was no physical violence or slapping or fighting or anything like that and that on the night before the divorce suit was drawn he asked her to take the check and deposit it in the joint checking account and she said no and he said "Well, then, I'm going to go to the lawyer and see if we can't get a divorce action to get this thing straightened out"; that the next day he went to his attorney and had him draw this divorce suit and that her refusal to deposit the check as he had requested was the sole cause of the separation and divorce action filed by him.  This evidence was not sufficient to prove any of the grounds for divorce which the plaintiff set forth in his petition, and it follows that the trial court did not err in directing a verdict for the defendant on the plaintiff's petition for divorce.

2. The trial court did not err in permitting the defendant to open and close the argument to the jury, since the only issues remaining in the case after the directed verdict against the plaintiff on his divorce petition were the issues made by the defendant's cross action. The burden of proof as to that cause was upon the defendant and not upon the plaintiff. *Nutting v. Wilson,* 75 Ga. App. 148, 151 (42 SE2d 575) ; *Whitley Constr. Co. v. O'Dell,* 94 Ga App. 426, 429 (1) (94 SE2d 784). "The party on whom the burden of proof rests has the right to open and conclude the cause before the jury." *Mason & Dickinson v. Croom,* 24 Ga. 211 (2) ; *Higdon v. Williamson,* 140 Ga. 187 (2) (78 SE 767) ; *Gaulding v. Gaulding,* 209 Ga. 781, 783 (3) (75 SE2d 811). It follows that the trial court did not err in refusing the plaintiff the right to open and conclude and in granting this right to the defendant.

3. The plaintiff sought to introduce in evidence unsigned copies of what he contended were joint federal income tax returns of the parties for certain years prior to the institution of the divorce proceeding. Assuming, but not deciding, that these papers were otherwise shown to be admissible, there was no proof that they were duplicate originals or correct copies of the original returns signed by the defendant, and the trial court did not err in excluding them on the objection of the defendant that there was no proof of their authenticity. *Hargrave v. State,* 70 Ga. App. 648, 650 (29 SE2d 428) ; *State Hwy. Dept. v. Harrison,* 115 Ga. App. 349, 351 (7) (154 SE2d 723). While the defendant did admit that she had signed joint tax returns to be filed on behalf of her husband and herself, she denied that she had been permitted by the plaintiff to examine those returns and she denied that she was able to say that the papers offered in evidence were in fact copies of the returns which she had signed. For this reason they were not admissible against the defendant as constituting extrajudicial admissions by her of the amount of the plaintiff's income for the years involved.

4. Before the testimony of a witness given under oath upon a former trial may be proved it must appear that the issues on both trials are substantially the same, that the parties are the same, and that the witness is since deceased, or is disqualified or is inaccessible. *Code* § 38-314. *Estill v. Citizens & Southern Bank,* 153 Ga. 618 (6a) (113 SE 552) ; and see *Taylor v. State,* 126 Ga. 557 (2) (55 SE 474) and *Brinson R. Co. v.*

*Beard,* 11 Ga. App. 737, 741 (76 SE 76). Where it is sought to prove the testimony of a witness, a physician, by introducing a transcript of his testimony upon a former hearing, it not appearing that the witness is not still living or disqualified, the necessary showing of inaccessibility is not satisfied by showing merely that the witness, though he had been subpoenaed, was absent from the courtroom because he was engaged in performing an operation.

5. One ground of enumerated error complains of the failure of the court to charge the jury without request that the defendant could not recover property for which she had not prayed in her cross petition. This contention is without merit. She prayed that she be awarded permanent alimony as provided by law. Properly construed, the verdict awarding the defendant plaintiff's interest in the house was made under the defendant's general prayer for alimony (*Wright v. Wright,* 208 Ga. 588 (68 SE2d 573)), and was authorized by the express provisions of *Code* § 30-209 which authorizes the jury to award the wife alimony either from the corpus of the estate or otherwise.

6. In its verdict awarding a divorce to the defendant, the jury awarded her as permanent alimony "plaintiff's ownership of property known as 6050 Riverwood Dr., N.W., Atlanta, Georgia, and all furnishings and fixtures therein," $10,000 to be paid within 90 days and $600 per month. Appellant contends that this verdict was not authorized by the evidence and that it is excessive. On the issue of the plaintiff's earnings, earning capacity and his ability to pay alimony, the evidence was in sharp conflict. The plaintiff contended that his health was poor, that by reason of that fact, he was unable to work regularly at his profession of dentistry, and that his annual income was in the neighborhood of $5,000, and had been at this level for the past several years. However, the defendant introduced documentary evidence which showed that less than a year and a half prior to the date of the trial the plaintiff had applied for a loan to buy the house at 6050 Riverwood Drive, N.W., Atlanta, Georgia, and had stated in his application for credit that his annual income was $28,470 and had listed assets and liabilities showing a net worth of $76,700. Furthermore, the evidence showed that in making the application for a loan on the Riverwood Drive property, plaintiff had insisted that the note in the principal amount of $38,600,

which he was to give as a part of the purchase price carry a provision permitting its prepayment in full after two years. Defendant testified that the reason he wanted this provision included in the loan was that he was making enough money to pay the house off in two years and that his dental practice since he had moved his office to Smyrna in September of 1963 was so good that he was able to pick and choose his customers and was also able to hire additional personnel to assist him in his practice. The jury was further authorized to discount the plaintiff's contentions respecting his income from the evidence of the defendant to the effect that during the many years that she had assisted the plaintiff in his office he had habitually indulged in the practice of bargaining with his patients on the fees he would charge, offering substantial discounts for cash payments, and that, when the patients paid him in cash, these cash receipts were never reported on his books from which information for income tax returns was derived.

With respect to the award to the wife of "plaintiff's ownership of property known as 6050 Riverwood Dr., N.W., Atlanta, Georgia," plaintiff contends such award was unauthorized in that there was no evidence that he owned a one-half interest in the property free and clear of encumbrances. The record shows that prior to the return of the verdict, the jury returned to the courtroom for further instructions, and in response to a specific question as to whether or not they could transfer the one-half interest of Dr. Standridge in the house to the defendant, free and clear, the court instructed the jury that any such transfer of the one-half interest of Dr. Standridge would carry with it the liabilities and encumbrances that the one-half interest would bear. In view of this charge, the jury's award to the defendant of the plaintiff's ownership of the property cannot be construed as awarding to the defendant a greater interest in the house than was actually owned by the plaintiff. Suffice it to say that the evidence showed that the property was fairly heavily encumbered since it appeared that the loan in the principal amount of $38,600 payable over a period of 10 years in monthly instalments including principal and interest in the amount of $418.92 beginning February 1, 1966, had been closed only a little more than a year prior to the trial, and there was no evidence that plaintiff had exercised the prepayment privileges or that he had paid more

106

than the regular monthly instalments thereon. Construed in the light of the trial court's instructions, the verdict of the jury awarding to the defendant the plaintiff's ownership of the house and lot imposed upon her the burden of discharging any of the liens and encumbrances that might be against the property if she was to realize any benefit from it, and so construed, this feature of the jury verdict when considered in connection with the uncontradicted evidence relating to the liens and encumbrances on the property was not such a substantial award to the defendant as it might at first seem. As further evidence of the plaintiff's income level, the jury was authorized to find that in the six months preceding the divorce and after the parties had moved to the new home, the plaintiff had spent in excess of $11,000 in cash in improving the house inside and out including carpeting, installing a different heating and cooling system for the house, landscaping of the front yard and redecorating. Under all the evidence the jury had before it, this court cannot say that the verdict was not authorized by the evidence or that it was excessive.

*Judgment affirmed. All the Justices concur.*

Argued November 14, 1967—Decided February 13, 1968.

*Sidney T. Schell, Dan C. Mitchell,* for appellant.

*Lipshutz, Macey, Zusmann & Sikes, John M. Sikes, Jr.,* for appellee.